### Shewman v. Coons
*[Cite as 2 AOA 83]*

Case No. 89CA46
Greene County, (2nd)
March 29, 1990

R.C. 1923.02
R.C. 1923.06
R.C. 5321.17
Civ. R. 53

*David B. Grieshop, 528 E. Dayton Yellow Springs Road, Fairborn, Ohio 45324, Attorney for Plaintiff-Appellee.*

*C. Douglas Mort, Rural Legal Aid Society of West Central Ohio, 39 Greene Street, Xenia, Ohio 45385, Attorney for Defendant-Appellant.*

WOLFF, P.J.

On June 7, 1989, T. W. Shewman filed a complaint against Mike Coons which alleged as follows:

Plaintiff states that he is the owner of real state located at 3671 Trebein Road, in Fairborn, Greene County, Ohio; that the Defendant Mike Coons entered into a written lease with the Plaintiff for said premises; and that the Defendant agreed to pay rent thereunder in the amount of $220 per month.

Plaintiff states that the Defendant is presently wrongfully holding over after the expiration of the lease term and does now unlawfully and forcibly detain said premises from the Plaintiff.

Plaintiff further states that on the 31st day of May, 1989, the Defendant Mike Coons was served with written notice to vacate said premises on or before the 4th day of June, 1989, but that the Defendant has failed to vacate the same.

WHEREFORE, Plaintiff demands a Writ of Restitution, restoring possession of said premises to Plaintiff, rent at the rate of $7.33 per day from the 1st day of June, 1989, until said premises is vacated, plus his costs expended herein and interest from date of judgment.

A hearing was held before the referee of the Fairborn Municipal Court wherein Mike Coons testified that on April 30, 1989, his lease with Shewman had "expired." (Tr. at 9.)

He stated that his wife handed Shewman the rent for May. (Tr. at 15-16.)

He stated that he paid the rent until he received the complaint in June, 1989. (Tr. at 13-15.)

He stated that his wife, Becky Coons, received "a written 30-day notice" and that he saw the notice. (Tr. at 10.) The parties stipulated that Shewman refused to accept the Coons' June rent payment. (Tr. at 18.)

Becky Sue Coons stated that the rent was due on the first day of every month. (Tr. at 22.)

She stated that on May 2, 1989, she paid the rent for May and that Shewman told her at that time that he wanted her out of his house. (Tr. at 22.)

Becky stated that Arnie Aliff was present when Shewman told her that she and her husband had to vacate the premises. (Tr. at 38.)

She testified that she told him that she needed written notice for him. (Tr. at 23.)

She stated that Arnie gave her written notice on May 4, 1989, that they had to leave the premises by June 4, 1989. (Tr. at 20-30.)

She testified that on May 31, 1989, she received a three-day notice which stated that Shewman wanted the premises vacated by June 4, 1989. (Tr. at 23.)

Arnold Aliff testified that he handles Shewman's commercial affairs and that prior to May 1, 1989, he spoke to Becky Coons at "the water trough." (Tr. at 33-44.)

He stated that Shewman was present during the discussion. (Tr. at 36.) Aliff also testified as follows:

"THE COURT: Was Mr. Coons around?

"THE WITNESS: No, he was not. And I told her at that time that they were going to have to move, and she started crying and went back to the house. I told her she was going to have to move in 30 days at that time.

*BY MR. GRIESHOP*:

"Q. Excuse me, Arnie, At that time or after you approached her again, what did she say to you?

"A. They said they needed a written notice to take to the Welfare or to the Greene Metropolitan Housing Authority, so that they can get assistance.

"Q. And after that conversation, did you, in fact, serve them with a written 30-day notice?

"A. Yes, I did. I served them with a 30-day, but it was on the 3rd of May.

"THE COURT: Was that just to support her request for HUD?

"THE WITNESS: Yes, it was. That's all it was for, was to support her request." (Tr. at 35.)

Aliff later admitted that the written notice was dated May 4, 1989. (Tr. at 37.) He stated that no written notice had been given to the Coons prior to May 3 or 4, 1989. (Tr. at 37.)

An entry signed by Judge Wettlaufer and Referee Richman granting restitution of the premises and costs of the suit to Shewman states, in pertinent part, as follows:

"This day this cause coming on to be heard and it appearing to the Court that Defendant herein was duly and legally served with process; that the Defendant did appear - the Court finds that the facts set forth in Plaintiff's Complaint are true and that Plaintiff should have restitution of said premises therein described forthwith."

Coon timely appealed from the entry and raises three assignments of error in his appeal:

"1. The trial court erred by having entered judgment without a report and recommendation from the referee containing findings of facts

pursuant to Civil Rule 53(E) and that this error prejudiced the appellant by depriving him of the right to have the trial court make an independent analysis of the issues as required by Civil Rule 53.

"2. The trial court's entry granting restitution is against the manifest weight of the evidence.

"3. The trial court erred in denying appellant's motion to dismiss for lack of jurisdiction due to failure to comply with Ohio Revised Codw § 1923.06."

In the first assignment of error, Coons maintains that since no report and recommendation was prepared by the referee, "the Trial Court did not have information sufficient to make an independent analysis of the issues and apply appropriate rules of law in reaching it's [sic] Judgment Order." Coons also maintains that if we determine that the judgment entry "serves as a Referee's report, [we must conclude that the entry] is still deficient because it does not contain enough facts to enable the Trial Court to make an independent determination."

Civil Rule 53(E)(1) states, in pertinent part, that the referee "shall prepare a report upon matters submitted by the order of reference."

Civil Rule 1(C)(3) states that "[t]hese rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure *** in forcible entry and detainer ***."

In *State, ex rel. GMS Management Co. v. Callahan* (1989), 45 Ohio St. 3d 51, 54-55, the court stated:

"This court has stated that forcible entry and detainer, as authorized in R.C. Chapter 1923, is a *summary proceeding* in which any judge of a county court may make inquiry into disputes between landlords and tenants, and where appropriate, order restitution of the premises to the landlord. Also, given its summary nature, the drafters of the Rules of Civil Procedure were careful to avoid encrusting this special remedy with time consuming procedure tending to destroy its efficacy. The underlying purpose behind the forcible entry and detainer action is to provide a summary, extraordinary, and speedy method for the recovery of [the] possession of real estate in the estate cases especially enumerated by statute. Further, the Civil Rules will * * * be inapplicable if their application would frustrate the purpose of the [forcible entry and detainer] proceeding."(Citations omitted.)

In *Cuyahoga Metropolitan Housing Auth. v. Jackson* (1981), 67 Ohio St. 2d 129, syllabus, the court held:

"Civ. R. 53(E) and 54(B) by their nature are clearly inapplicable to proceedings in forcible entry and detainer, on the authority of Civ.R. 1(C)."

The *Jackson* court also stated:

"Given the summary nature of [a forcible entry and detainer] proceeding, and recognizing that the crowded dockets common to Municipal Courts in Ohio require use of referees, we find no need to compel strict adherence to Civ. R. 53 governing referees. Rather, the trial court need only comply with the forcible entry and detainer statute provisions requiring a judge, and not the referee, to make the final judgment entry; as the trial court did in this case. Civ. R. 53(E), requiring a 14 day delay between the filing of the report by the referee and the final judgment entry by the judge, by its nature is clearly inapplicable since it would destroy the summary nature of forcible entry and detainer proceedings." 67 Ohio St. 2d at 131-32.

In *Colonial American Development Co. v. Griffith* (1990), 48 Ohio St. 3d 72, the Supreme court of Ohio affirmed this court's determination that the automatic stay provision of Civ. R. 53(E) (7) is inapplicable to forcible entry and detainer actions. The court stated:

"Our determination in *Jackson* that Civ. R. 53(E) was by its nature clearly inapplicable to forcible entry and detainer actions was based on the potential for delay of what is intended to be a summary proceeding. We endorsed that principle earlier this year in *State, ex rel. GMS Management Co., v. Callahan* (1989), 45 Ohio St. 3d 51, 543 N.E. 2d 483, holding Civ. R. 52 inapplicable in forcible entry and detainer actions because of the need to avoid delay.

"The amended version of Civ. R. 53(E) (7) does not eliminate but merely postpones the potential for delay to the period between entry and execution of a judgment. Judge Brogan recognized this problem in his opinion below: "If the rule applies to forcible [entry and] detainer actions, the defendant need only wait until the bailiff is about to levy execution and then file an objection to the court's judgment. This objection will act to stay enforcement of the judgment without the necessity of the defendant posting security to protect the plaintiff's interests. * * *""

If judgment is entered against a defendant in a forcible entry and detainer action, he or she may delay execution and thereby eviction by filing a timely appeal pursuant to App. R. 4 and by posting a supersedeas bond. This procedure has the advantage of protecting the interests of

both parties to the action. 48 Ohio St. 3d at 73-74.

The Supreme Court of Ohio held in *Jackson* that Civ. R. 53(E) is inapplicable to forcible entry and detainer causes of action. 67 Ohio St. 2d at syllabus. The courts stated that it found "no need to compel strict adherence to Civ. R. 53 governing referees." *Id.* at 131. The *Jackson, Griffith,* and *Callahan* decisions regarding the application of Civ. R. 52, 53(E) and 54(B) in forcible entry and detainer cases focus on the need to avoid delay. The court states, in effect, that the summary nature of forcible entry and detainer cases would be frustrated by the requirements of Civ. R. 2, 53(E), and 54(B).

Nevertheless, Civ. R. 1(C) has not yet been authoritatively interpreted to hold that in forcible entry and detainer cases, we dispense with the requirement that only judges shall grant judgments, *Jackson, supra,* and only on the basis of their independent analysis. Thus, where on the basis of their courts utilize referees in forcible entry and detainer actions, the requirement of a report and recommendation cannot be entirely dispensed with.

The court in *Zacek v. Zacek* (1983), 11 Ohio App. 3d 91, 93-94, stated:

"We have previously held that Civ. R. 53(E) contemplates a report from the referee which includes a statement of the basis of his findings and recommendations in order that the trial court can make its own independent analysis of the report's validity. Accordingly, the report must include sufficient information to enable the trial judge to render his own decision. Obviously, if the report does not include a statement of the facts forming the basis for the referee's recommendation, the trial court cannot adopt the recommendation as an order of the court since the report lacks the necessary information upon which an independent analysis of questions of law raised by the controversy can be based. This is not to say that the referee's report is an equivalent of, and must comply with the detail and formal requisites of, separate findings of fact and conclusions of law." (Citations omitted.)

No separate report and recommendation was filed by the referee in this case. The referee and trial judge both signed an entry that states, in pertinent part, that "the Court finds that the facts set forth in Plaintiff's Complaint are true * * *." (The "docket sheet judgment entry" in *Jackson, supra,* was no less cryptic than the entry here. However, the court's primary concern in *Jackson* appears to have been the 14-day delay between filing of the referee's report and entry of judgment if Civ. R. 53(E) was applied to forcible entry and detainer cases.)

Other than the June 28, 1989, entry the record is silent as to the referee's findings of fact and recommendation to the trial court. Where a referee is utilized in forcible entry and detainer cases, his findings of fact must be submitted to the trial judge in such fashion that *the judge* is able to determine whether the landlord established his right to the premises. The record in this case contains no evidence of any report and recommendation by the referee from which the trial judge could adequately review the particular facts of the case and make his independent determination. The first assignment of error is well taken.

Coon's second assignment of error states that the court's decision to grant restitution in favor of Shewman was against the manifest weight of the evidence. He argues that he was given inadequate notice to terminate his tenancy under R.C. 5321.17(B) which states:

"The landlord or the tenant may terminate or fail to renew a month-to-month tenancy by notice given the her at least thirty days prior to the periodic rental date."

Coons cites no case law and our research has uncovered no authority that states that thirty-day notice pursuant to R.C. 5321.17(B) must be written. The Cuyahoga County Court of Appeals in *Cohare Realty Co. v. Stilson* (1926), 22 Ohio App. 432, stated that thirty days written notice by the tenant of his intent to terminate the tenancy and vacate the premises was required based on the language of the lease.

The lease agreement between Shewman and Coons is not a part of the record. No other evidence indicates that the lease required written notice of termination of the tenancy. Mr. Aliff testified that he told Mrs. Coons prior to May 1, 1989, that she and her husband had to move out of Shewman's house in thirty days. The trial court, through its referee, apparently believed Aliff's testimony that he noticed Becky Coons prior to May 11, 1989, to vacate the premises.

A reviewing court is required to give deference to the findings of the trial court since "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. City of Cleveland* (1984), 10 Ohio St. 3d 77, 80. Also, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest

weight of the evidence." *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 280. It appears from our review of the record that the trial court could have reasonably concluded that sufficient and timely notice, as required by R.C. 5321.17(B), was given to Mr. and Mrs. Coons despite the fact that the notice was not written. The second assignment of error is not well taken.

Coons's third assignment of error states:

"The trial court erred in denying appellant's motion to dismiss for lack of jurisdiction due to failure to comply with Ohio Revised Code §1923.06."

R.C. 1923.06 states:

"(A) Except as otherwise provided in this section, the summons in an action under this chapter shall be issued, be in the form specified, and be served and returned as in the Rules of Civil Procedure. Such service shall be at least five days before the day set for trial.

"(B) Every summons issued under this section to recover residential premises shall contain the following language printed in a conspicuous manner: A complaint to evict you has been filed with this court. No person shall be evicted unless his right to possession has ended and no person shall be evicted in retaliation for the exercise of his lawful rights. If you are depositing rent with the clerk of this court you shall continue to deposit such rent until the time of the court hearing. The failure to continue to deposit such rent may result in your eviction. You may request a trial by jury. You have the right to seek legal assistance. If you cannot afford a lawyer, you may contact your local legal aid or legal service office. If none is available, you may contact your local bar association."

Coons contends that the summons he received failed to present the R.C. 1923.06(B) language in a conspicuous manner. He argues that compliance with R.C. 1923.06(B) "is a condition precedent to the bringing of an action of forcible entry and detainer" and that the trial court erred in not dismissing the complaint for failure to comply with R.C. 1923.06(B).

Coons cites *Dayton Metropolitan Housing Auth. v. Russell* (1980), 16 O.O. 3d 94, in support of his argument that the trial court erred in failing to dismiss the complaint. *Russell* focused on R.C. 1923.04, dealing with the form of the three-day notice to vacate which must be served *prior to* initiating a forcible entry and detainer action. *Russell* does not mandate dismissal where the summons fails to comply with R.C. 1923.06. Whether a forcible entry and detainer complaint

should be dismissed because the summons does not comply with R.C. 1923.06 was not addressed in *Russell:*

"We agree with defendant that full compliance with R.C. *1923.04* is a condition precedent to the bringing of an action in forcible entry and detainer. That section clearly mandates that the notice "to leave the premises" *must* be given "three or more days before beginning the action," in the manner and form set forth therein. If the notice is not given within the time, and in the manner and form set forth therein, the complaint in forcible entry and detainer may not be filed. Thus, whether the summons provided for under R.C. 1923.06 was in proper form is immaterial, since if the complaint was not properly filed there was nothing upon which a summons could issue." *Id.* at 95-96 (emphasis added).

Nor must we address that issue here.

The summons contained in the documents in this case included the pertinent R.C. 1923.06(B) language that was placed in the bottom left-hand corner of the page, was in small, bold faced print, and was framed with red lines forming a rectangle around the language. Despite the fact that the language was in smaller print than the rest of the print on the summons, the language was in bold print and was outlined in red.

At the hearing and in deciding Coons's motion to dismiss, the referee described the summons then before the court as having the R.C. 1923.06 language in "special type on the left-hand side of the page * * * contained within black borders." (Tr. at 5.) The referee questioned Mrs. Coons, who was under oath, as follows:

"THE COURT: There are some yellow highlights on this thing. Was that put on there by the Bailiff of the court?

"MRS. COONS: When I received it, that's the way it was.

"THE COURT: Well, did you receive it in the mail or by a person?

"MRS. COONS: By a Bailiff.

"THE COURT: Okay. He gave it to you, right?

"MRS. COONS: Right.

"THE COURT: Did it have the highlight on there?

"MRS. COONS: Yes.

"THE COURT: Did you have any discussion with him about anything else, or did he just give it to you?

"MR. COONS: He mentioned something about, you know, he was bringing this from the

courtroom and that we were being evicted.

"THE COURT: He told you that this is an eviction case?

"MRS. COONS: Yes.

* * *

"THE COURT: All right. Did you read this summons?

"MRS. COONS: I read what was there, yes.

"THE COURT: Did you notice that black stuff?

"MRS. COONS: I did not, no. I hate to say this, but I did not notice it." (Tr. at 5-7.)

The referee learned from this testimony that Mrs. Coons knew what the summons pertained to and that she at least noticed that a part of the summons was highlighted. In addition, Coons apparently noticed the language since he obtained counsel and appeared in court pursuant to the summons. We conclude from the record before us that the referee could have reasonably found that the R.C. 1923.06(B) requirement that the pertinent statutory language be printed in a conspicuous manner was met in this case. Hence, we need not address whether a failure of the summons to comply with the "conspicuous language" requirement of R.C. 1923.06 requires dismissal of the complaint.

The trial court did not err by not dismissing the complaint. The third assignment of error is not well taken.

The judgment will be reversed in accordance with this opinion.

*Judgment reversed.*

WILSON, J. and BROGAN, J., Concur.